922 F.2d 836
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Thomas Joseph LUDWIG, Defendant-Appellant.
 No. 90-7290.
 United States Court of Appeals, Fourth Circuit.
 Submitted July 30, 1990.
Decided Jan. 9, 1991.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. W. Earl Britt, District Judge. (CA-89-929)
 William E. Martin, Federal Public Defender, Jeffrey L. Starkweather, Assistant Federal Public Defender, Raleigh, N.C., for appellant.
 Margaret Person Currin, United States Attorney, Eileen G. Coffey, Assistant United States Attorney, Raleigh, N.C., for appellee.
 E.D.N.C.
 AFFIRMED.
 Before K.K. HALL, PHILLIPS and WILKINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Thomas Ludwig brings this appeal of the determination by the district court that he should remain confined to Butner Federal Correctional Institute, pursuant to 18 U.S.C. Sec. 4246, because his release would pose a substantial risk of injury to persons or to property. Id. After reviewing the briefs of counsel and the record in this case, we dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process. We hold that the district court's finding is not clearly erroneous, and thus we affirm.
 
 
 2
 * Ludwig, who has been diagnosed since 1973 as a paranoid schizophrenic, was arrested in Michigan for making threats to a Veterans Administration hospital official. He was deemed not competent to stand trial on the federal charge and was committed to the care of the Attorney General. He was subsequently transferred to Butner FCI. After several months at Butner, the warden requested a hearing pursuant to 18 U.S.C. Sec. 4246 to determine whether Ludwig could continue to be held on the ground that he suffered from a mental disease or defect which, were he to be released, would create a substantial risk of bodily injury to another person or serious property damage. Id.
 
 
 3
 The district court appointed a psychiatrist to examine Ludwig and then held a Sec. 4246 hearing. A psychiatrist from Butner, Dr. Martha Davidson, testified that Ludwig suffers from paranoid schizophrenia, which he has suffered from since 1973; that his disorder leads him to engage in confrontational and threatening behavior, conduct that continued during his stay at Butner and which prompted officials to keep him in confinement; that he was given mass amounts of medication while at Butner, medication that only marginally affected his behavior; that he engaged in generally psychotic behavior, by pacing back and forth, seemingly listening to voices, erupting with loud sounds, and talking of demons and angels; and that he suffered from hallucinations and delusions. Dr. Davidson also made regular reference to his "long history" of criminal behavior. (Candor requires us to note that this history is sketchy at best in light of the nearly seventeen years that Ludwig has been diagnosed as having a mental disorder. Ludwig clearly was arrested in 1981 for kicking and assaulting a VA guard as he was leaving a VA hospital. He also was arrested in 1984 for attempting to carry a concealed weapon. In asserting that Ludwig had a long history of criminal activity, Dr. Davidson appears to rely on Ludwig's own statements. See J.A. at 16, 21-24.)
 
 
 4
 With all this as a foundation, the Butner staff psychiatrist concluded that Ludwig should not be released because he posed a substantial risk of bodily injury. She recommended that continued drug therapy and strict confinement was the only way to deal with Ludwig.
 
 
 5
 The court-appointed psychiatrist, Dr. Billy Royal, agreed that Ludwig suffers from paranoid schizophrenia. He also opined that Ludwig may suffer from a toxic psychosis due to the high levels of medication combined with high levels of caffeine and nicotine. (Dr. Royal observed: "He's taking Halodol [among other drugs] at a level that is probably higher than I have seen continuously anyone take...." J.A. at 43.) Dr. Royal also agreed with the conclusion that Ludwig's mental disorder leads him to make threatening statements. However, Dr. Royal focused on the tendency of Ludwig to make frequent threats but not to carry them out.* J.A. at 44-45, 49-50. Based on this assessment, Dr. Royal concluded, on the ultimate question of whether Ludwig posed a substantial risk of bodily injury or serious property damage:
 
 
 6
 Although he's made threats, as I review the records, there's been no assaultive behavior on other people. I saw the basis of that. There's no indication that he's been acutely dangerous to others or property. At this point, I think he has some acute problems that need attention.
 
 
 7
 .............................................................
 
 
 8
 ...................
 
 
 9
 * * *
 
 
 10
 He gives no indication of immediate threat verbally or otherwise to other people.
 
 
 11
 J.A. at 49-50.
 
 
 12
 After hearing this testimony, the district court concluded that clear and convincing evidence supports the government's position that Ludwig posed a substantial risk of serious injury to others or property. The court ordered Ludwig to remain at Butner. This appeal followed.
 
 II
 
 13
 The standard for committal under 18 U.S.C. Sec. 4246 is that the subject must be shown to have a mental disease and that he pose a substantial risk of serious harm to others or property. In this case, we need only focus on the substantial risk question, since the mental incapacity of Ludwig is not in dispute. In focusing on the substantial risk question, we are mindful of the standard of review: we cannot set aside the district court's finding, which was based on clear and convincing evidence, unless we are left with the definite and firm conviction that a mistake has been committed. United States v. United States Gypsum Co., 333 U.S. 364 (1948); Ente Nazionale Per L'Energia Electtrica v. Baliwag Navigation, Inc., 774 F.2d 648, 653-54 (4th Cir.1985).
 
 
 14
 The district court heard testimony from two experts. One expert had the opportunity to observe Ludwig over a long period of time. She testified to his mental condition, his threatening behavior, his minor reaction to heavy doses of medication, and her opinion that his threatening behavior would continue or get worse outside of the structured environment of Butner. The district court heard from another expert who only had the opportunity to observe Ludwig for a brief period of time. He concurred in the diagnosis of Ludwig but disagreed, principally, with the Butner psychiatrist's characterization of his past as being filled with violent acts.
 
 
 15
 Faced with this conflict between experts as to predictions of violent behavior, an area as fraught with uncertainty as we can imagine, the district court concluded that Ludwig posed a substantial risk. We are not convinced, upon a review of the evidence, that this finding is clearly erroneous. As indicated above, it has ample support in the record. Accordingly, the district court order should be affirmed.
 
 
 16
 AFFIRMED.
 
 
 
 *
 We note that the testimony at the hearing and appellant's brief indicate that upon Ludwig's arrest for threatening a VA official the police found no weapons in the house and his live-in friend, whom Ludwig periodically threatened, suggested that this is routine behavior for Ludwig